UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SUSAN L. CADIEUX,

        Plaintiff,

-vs-                                      Case No. 5:04-cv-355-Oc-10GRJ

OCALA BREEDER SALES COMPANY,
INC.,

        Defendant.
_____

## **O R D E R**

This employment discrimination case is before the Court for consideration of the Defendant's Motion for Summary Judgment (Doc. 12), to which the Plaintiff has responded (Docs. 32, 33). For the reasons that follow, the Court concludes that the motion is due to be denied.

## **BACKGROUND**

The Plaintiff, Susan Cadieux, claims that while she was employed by the Defendant, Ocala Breeder Sales Company, Inc.,[1] her supervisor, Dean Wright, treated her differently because of her age and gender.[2] When the Plaintiff became store manager for the Defendant in 2000, she claims that she immediately began to have confrontations with Mr.

---

[1] Ocala Breeders Sales Company is a feed and hay business. Doc. 16, Deposition of Dean Wright, pg. 166.

[2] Doc. 1, Complaint. The Plaintiff became a sales clerk for the Defendant in 1991, and was promoted to store manager in 2000. Doc. 17, Deposition of Susan Cadieux, pg. 10, 17.

Wright.[3] The Plaintiff testified that Mr. Wright always used derogatory statements and foul language when speaking to her and only her.[4] For instance, he would tell the Plaintiff "you're just like a woman with your head up your ass" or "salesmen can't deal with you because you're a woman" or "things wouldn't happen this way if you weren't a woman."[5] In 2003, the Plaintiff recalled that Mr. Wright asked her if she was "too old and feeble to do [her] job" when she was having trouble loading large boxes into a truck.[6] At one point, Mr. Wright also suggested that the Plaintiff see the bookkeeper and ask who her hairdresser was because she was getting a lot of gray hair and looking old.[7] Mr. Wright denies ever making any statements to the Plaintiff regarding her gender or age.[8]

According to the Plaintiff, on January 8, 2004, Mr. Wright told her that she was not "management material" and terminated her employment.[9] Mr. Wright claims that the Plaintiff was terminated after he learned that she was selling feed at a discounted value.[10] According to Mr. Wright, this issue, taken together with all of her other serious

---

[3]   Doc. 17, Deposition of Susan Cadieux, pg. 17-18.

[4]   Id. at 20.

[5]   Id. at 24.

[6]   Id. at 29.

[7]   Id. at 30.

[8]   Doc. 16, Deposition of Dean Wright, pg. 198.

[9]   Doc. 17, Deposition of Susan Cadieux, pg. 37.

[10]  Doc. 16, Deposition of Dean Wright, pg. 191, 241.

management issues, was reason for her dismissal.[11] During her termination meeting with Mr. Wright and Curtis Weller, another manager employed by the Defendant, the Plaintiff was offered two months of severance pay.[12] The Plaintiff was told when she picked up her severance check from Mr. Weller that "you're lucky a woman your age to be getting a check like this,"[13] which Mr. Weller denies.[14] The Plaintiff, who was 52 years old at the time of her termination,[15] was then replaced by Howard Crowell, who was 33 years old.[16]

The Plaintiff's Complaint is framed in five counts: (1) age discrimination in violation of Florida Statute § 760.10; (2) gender discrimination in violation of Florida Statute § 760.01 *et. seq.*; (3) gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; (4) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*; and (5) slander.

The Defendant moves for summary judgment on all counts except for the Plaintiff's slander claim.

---

[11]  Id. at 192.

[12]  Id. at 192-193, 197; Doc. 17, Deposition of Susan Cadieux, pg. 38. The Plaintiff testified that she was given $5,000 in severance pay.

[13]  Doc. 17, Deposition of Susan Cadieux, pg. 33.

[14]  Doc. 16, Deposition of Curtis Weller, pg. 89.

[15]  Doc. 17, Deposition of Susan Cadieux, pg. 4. The Plaintiff was born on January 17, 1951.

[16]  Id. at 37; Doc. 22, Deposition of Howard Crowell, pg. 3, 5.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party."[17] As the Supreme Court held in Celotex Corp. v. Catrett, the moving party bears the initial burden of establishing the nonexistence of a triable fact issue.[18] If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[19] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[20]

---

[17]    Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[18]    477 U.S. 317 (1986).

[19]    Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

[20]    Celotex, 477 U.S. at 324, 106 S.Ct. at 2553.

**DISCUSSION**

*I. Burden Shifting Framework*[21]

The Age Discrimination in Employment Act makes it unlawful for an employer to discriminate against any individual because of such individual's age,[22] and Title VII makes it unlawful for an employer to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment" because of such individual's sex.[23] In both types of actions, the Plaintiff bears the burden of proving her prima facie case by way of direct, statistical, or circumstantial evidence.[24]

In the absence of either direct or statistical evidence of discrimination, the Plaintiff must rely on circumstantial evidence in order to establish her prima facie case. If the Plaintiff establishes facts that are adequate to permit an inference of age or sex discrimination, then pursuant to the burden shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green,[25] the burden of production shifts to the

---

[21]  As a preliminary matter, the Court notes that the age and sex discrimination claims brought under the Florida Civil Rights Act are considered within the same analytical framework used to decide claims brought pursuant to the Age Discrimination in Employment Act and Title VII. See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998); Florida State Univ. v. Sondel, 685 So.2d 923, 924 n. 1 (Fla. 1st DCA 1996).

[22]  29 U.S.C. § 623(a).

[23]  42 U.S.C. § 2000e-2(a).

[24]  Damon v. Flemin Supermarkets of Florida, Inc., 196 F.3d 1354 (11th Cir. 1999); Hinson v. Board of Education, 231 F.3d 821 (11th Cir. 2000).

[25]  411 U.S. 792 (1973).

Defendant to rebut the inference of discrimination by offering "legitimate, non-discriminatory reasons" for the Defendant's employment decision.

If the Defendant meets its burden of production, in order to survive summary judgment, the Plaintiff must present evidence to demonstrate that the Defendant's articulated reasons for its adverse employment action are a mere pretext for discrimination. To meet this burden, the Plaintiff "may attempt to establish that [s]he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence."[26]  And, the Supreme Court has held that on the issue of whether an employer's explanation is pretextual, "the trier of fact may still consider evidence establishing the Plaintiff's prima facie case and inferences property drawn therefrom."[27]

*II. Sex and Age Discrimination Claims*

As to the Plaintiff's sex and age discrimination claims, the Defendant does not argue that the Plaintiff is unable to establish prima facie case with respect to either claim.[28] Rather, the Defendant simply offers legitimate, non-discriminatory reasons for terminating the Plaintiff's employment. Thus, if the Plaintiff is able to create a genuine issue of material

---

[26]   Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (internal quotations omitted).

[27]   Id. (internal quotations omitted).

[28]   See Doc. 13, Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, pg. 9, 13.

fact as to the Defendant's proffered reasons, then summary judgment in favor of the Defendant will be denied.[29]

The Defendant's proffered legitimate, non-discriminatory reasons for terminating the Plaintiff are as follows: (1) the Plaintiff sold feed at discounted prices to her friend through the unauthorized use of a shareholder account; (2) the Plaintiff was unable to discipline her employees due to her close personal friendship with them and could not manage employee issues at her store, such as excessive overtime hours; (3) the Plaintiff failed to inspect incoming hay shipments to ensure that the store was receiving high quality hay; (4) the Plaintiff failed to keep important records, such as documentation of an employee's injury and Department of Transportation safety inspection records for company vehicles; (5) the Plaintiff made poor decisions, such as when she lent a pair of bolt cutters to an unknown individual who subsequently used the bolt cutters to break into a neighboring tack room; (6) the Plaintiff failed to keep an accurate inventory in her store; and (7) the Plaintiff failed to reduce costs at her store, such as when license plates and insurance were purchased for trailers which were only used for storage.[30]

---

[29] Hinson, 231 F.3d at 830-32.

[30] See Doc. 13, Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, pg. 3-5. In his deposition, Mr. Wright mentioned other reasons for terminating the Plaintiff, including that the Plaintiff's failure to "work the floor" and failure to manage employees who made mistakes in ringing up customers. Doc. 16, Deposition of Dean Wright, pg. 80-82, 150. In the Defendant's response to the Plaintiff's interrogatories, the Defendant also mentioned additional reasons for terminating the Plaintiff, including the Plaintiff purchasing bad inventory or hiding it in a storage trailer, hiding returned merchandise under the sales counter when it should have been returned to the vendor, failing to have roof leaks inspected and repaired, (continued...)

The Plaintiff disputes the Defendant's reasons for her termination. She testified (1) that it was never brought to her attention until after her termination that employees of shareholders were not allowed to buy feed at discounted prices, she sold feed at a discount to some customers after the shareholder gave them permission to buy at a discount, and she followed procedure by selling damaged bags of feed to customers at a discount;[31] (2) she had no problem with employees collecting overtime pay when they were not working,[32] she was told by the previous store manager that overtime was left to the discretion of the store manager,[33] she had not refused to write up any employee after she was told to do so,[34] and she had in fact disciplined several of her employees during her tenure as store manager;[35] (3) she properly monitored the hay quality and there was no change in the amount of complaints in hay quality from the previous store manager's tenure compared

---

[30](...continued)
bringing in day labor to unload trailers when full time employees could have done the work, excessively decorating her office, allowing the spouse of another employee to stay on the clock while she waited for husband to get off work late, using Mr. Wright "as a scare tactic with both vendors and other employees," not addressing computer input errors with Mr. Wright until the errors escalated into "a fiasco," and exaggerating the medical condition of an employee's child which caused Mr. Wright to give the employee additional time off from work. Doc. 32, Part 7, Answers to Plaintiff's First Set if Interrogatories, pg. 8. The Plaintiff also disputes these alleged legitimate, non-discriminatory reasons for her termination. See Doc. 32, Plaintiff's Statement of Facts, pg. 11-13.

[31]    Doc. 17, Deposition of Susan Cadieux, pg. 52, 68-69.

[32]    Id. at 43-44.

[33]    Doc. 33, Part 2, Affidavit of Susan Cadieux, pg. 4.

[34]    Doc. 17, Deposition of Susan Cadieux, pg. 50.

[35]    Doc. 33, Part 2, Affidavit of Susan Cadieux, pg. 3.

to her tenure as manager;[36] (4) she was not aware that she was supposed to document the injuries of employees which occurred while they were not working,[37] she kept personnel files for all of her employees,[38] and she was told by the previous store manager that it was the responsibility of the driver and warehouse manager to maintain inspection records for company vehicles;[39] (5) the entire time she was employed with the Defendant there were numerous occasions when the neighboring sales company had employees who did not arrive in the morning to unlock a feed room or tack room and different farmers would come in to borrow the bolt cutters so that they could go about their business;[40] (6) she addressed the inventory issues when they were brought to her attention;[41] and (7) the trailers used for storage were used in that capacity long before she became store manager and she explained this to Mr. Wright when he raised the issue with her.[42]

Accordingly, since material issues of fact remain with regard to the motivation of the Defendant, summary judgment is due to be denied as to the Plaintiff's sex and age discrimination claims.

---

[36]   Doc. 33, Part 2, Affidavit of Susan Cadieux, pg. 7.

[37]   Doc. 17, Deposition of Susan Cadieux, pg. 47.

[38]   Id. at 60.

[39]   Doc. 33, Part 2, Affidavit of Susan Cadieux, pg. 4-5.

[40]   Doc. 17, Deposition of Susan Cadieux, pg. 57.

[41]   Doc. 17, Deposition of Susan Cadieux, pg. 46.

[42]   Doc. 33, Part 2, Affidavit of Susan Cadieux, pg. 5-6.

## CONCLUSION

Upon due consideration and for the foregoing reasons, it is ordered that the Defendant's Motion for Summary Judgment (Doc. 12) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 17th day of January, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record